

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA ) <br> UNITED STATES JUDGE JOHN GRADY ) <br> UNITED STATES JUDGE VIRGINIA KENDALL ) <br> ASSISTANT STATE ATTORNEY GENERAL VIHAR PATEL ) <br> MOTEL OWNER OR MANAGER KISHAR PATEL ) <br> MOTELL OWNER OR MANAGER BHAGWAN PATEL ) <br> DUPAGE COUNTY JUDGE G. J. BAKALIS ) <br> DUPAGE COUNTY JUDGE KATHRYN CRESWELL ) <br> DR CORCORAN ) <br> DUPAGE COUNTY SHERRIFF JOHN E. ZARUBA <br> DUPAGE COUNTY JAIL CHIEF GARY LAVERY <br> DUPAGE COUNTY DEPUTY LT. ABRUZZO <br> DUPAGE COUNTY DEPUTY COLLINS <br> DUPAGE COUNTY DEPUTY LASKERO <br> DUPAGE COUNTY DEPUTY DEMPSEY <br> DUPAGE COUNTY DEPUTY LYONS <br> DUPAGE COUNTY ASA JOHN DOE #1 through 5 ) <br> NAPERVILLE POLICE OFFICER RINK #5633 ) <br> NAPERVILLE POLICE OFFICER MODERA #7174 ) <br> NAPERVILLE POLICE OFFICER LEON #5439 ) <br> NAPERVILLE POLICE OFFICER CORNELIUSEN #4636 ) <br> NAPERVILLE POLICE OFFICER SGT. WESTLOVE #2344 ) <br> NAPERVILLE POLICE OFFICER CAMMISO #3434 ) <br> NAPERVILLE POLICE OFFICER TROTSKY #2345 ) <br> NAPERVILLE POLICE CHIEF AT TIME OF ) <br> DUPAGE COUNTY PUBLIC DEFENDER ROBERT MILLER ) <br> DUPAGE COUNTY PUBLIC DEFENDER NEIL J LEVINE ) <br> COOK COUNTY JUDGE JAMES B LINN ) <br> COOK COUNTY STATES ATTORNEY JULIAN LANTZY ) <br> COOK COUNTY ASA MELISSA MEANA - ) <br> COOK COUNTY ASA SANDELL - ) <br> COOK COUNTY ASA JOHN DILLON ) <br> COOK COUNTY PUBLIC DEFENDER JANE DOE ) <br> COOK COUNTY SHERRIFS DEPUTY KELLY ) <br> COOK COUNTY SHERRIFF'S DEPUTY JAMES DILLON ) <br> COOK COUNTY PROBATION OFFICER KEVIN JESSE ) <br> COOK COUNTY JUDGE COLLEEN ANN HYLAND, ) <br> COOK COUNTY JUDGE COLLEEN MCSWEENY-MOORE ) <br> COOK COUNTY JUDGE JOHN J HYNES ) <br> COOK COUNTY JUDGE WILLIAM M. PHELAN ) <br> COOK COUNTY JUDGE PETER FELICE ) <br> COOK COUNTY PUBLIC DEFENDER MARK TEAGUE ) <br> COOK COUNTY PUBLIC DEFENDER TED THANASOURAS ) <br> COOK COUNTY PUBLIC DEFENDER TERRENCE QUINN ) <br> COOK COUNTY PUBLIC DEFENDER SCOTT LIPINSKI ) <br> COOK COUNTY PUBLIC DEFENDER BOB LEE ) <br> COOK COUNTY PUBLIC DEFENDER CLAUDETTE GREEN ) | 1:11-cv-05025 <br> Judge James F. Holderman <br> Magistrate Judge Young B. Kim <br><br> F I L E D <br> JUL 2 5 2011 <br> MICHAEL W. DOBBINS <br> CLERK, U.S. DISTRICT COURT |

```
COOK COUNTY ASA MS. NICHOLLE HEMPEL        )
COOK COUNTY ASA MS. NICOL KAKOR            )
COOK COUNTY ASA MS. CLAUDETTE GREEN        )
COOK COUNTY ASA PEGGY GILL-CURTIN          )
COOK COUNTY ASA MS. NAHEDA ZAYYAD          )
COOK COUNTY ASA DONALD BARTON              )
COOK COUNTY ASA ALAN J. SPELLBERG          )
COOK COUNTY ASA MILES J. KELEHER           )
COOK COUNTY ASA KALIA M. COLEMAN           )
DOCTOR MATHEW MARCOS                       )
COOK COUNTY STATES ATTORNEY ANITA ALVEREZ  )
COOK COUNTY PROBATION OFFICER MARY McCARTHY )
```

### Introduction

1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the amendments to the Constitution of the United States. (42 USC §1983)
2. The jurisdiction of the Court is invoked under 28 USC §§ 1331, 1343(3), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of a right, privilege, and immunity secured to the Plaintiff by the Amendments to the Constitution of the United States.
3. The jurisdiction of this Court is also invoked under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.
4. Pursuant to Rule 38 and Rule 57 of the Federal Rules of Civil Procedure, a jury trial is demanded on all issues of fact.
5. Injunctive Relief is sought to prevent certain Defendant Co-conspirators from making themselves judgment proof.
6. Monetary damages are also sought from each Defendant pursuant to Pearson v, Callahan, 555 U.S. 223, 129 S.CT. 808, 172 L.Ed 2d 565, as the constitutional rights of the Plaintiff violated by the Defendants were clearly established prior to the acts, and by conspiring with other co-conspirators, none of the Defendants are entitled to any immunity as they were clearly advocates for their co-conspirators
7. There are a number of Defendants named as co-conspirators who will claim that they are entitled to absolute immunity. The Plaintiff is challenging this claim and will challenge this claim to and through the Supreme Court to the Court in Hague if necessary for the following reasons.
    1. The Supreme Court when it adopted absolute immunity relied upon the historical argument that Congress's intended to retain well-established common law immunities when section 1983 was established.
    2. However, the Supreme Court was in error, as Absolute Immunity was not the established law in 1871.
    3. The first case affording prosecutors Absolute Immunity was not decided until 1896.
    4. Congress did not intend to retain Absolute Immunity for prosecutors in 1871 because it simply did not exist at that time.
    5. Absolute Immunity is not needed to prevent frivolous litigation or to protect the judicial process.
    6. Absolute immunity protects the dishonest prosecutor.
    7. Absolute immunity is unnecessary to protect the honest prosecutor.

8. The victim in an alleged prosecutorial misconduct action has to defeat the criminal charges <u>and</u> prove that the prosecutor violated clearly established law with a culpable state of mind.
9. The Qualified Immunity defense has been strengthened to provide a complete defense at the earliest stages of litigation
10. Qualified Immunity ensures prosecutors perform their functions independently, without undue timidity or distraction.
11. Qualified Immunity provides sufficient protection for prosecutors while also providing a necessary remedy for prosecutorial misconduct.
12. Absolute Immunity protects the dishonest prosecutor at the expense of the innocent victim.
13. Absolute Immunity frustrates the purpose of civil rights legislation by failing to deter frequent and egregious conduct.
14. Absolute Immunity hinders the development of constitutional standards and the implementation of structural solutions for systemic problems.
15. Prosecutorial liability with the safeguard of qualified immunity to prevent vexatious litigation is necessary to ensure the integrity of the criminal justice system.
16. The application of Absolute Immunity is also unnecessarily confusing and unworkable
17. The Absolute Immunity doctrine has produced circuit splits on at least 4 distinct issues.
    1. The circuit courts are split on whether a criminal defendants due process rights are violated when a prosecutor coerces a witness to testify falsely.
    2. The circuit courts are divided on whether a prosecutor is entitled to Absolute Immunity when they fabricate evidence and then uses the evidence in a judicial proceeding.
    3. The circuit courts have taken different approaches to the probable cause requirement for Absolute Immunity announced in Buckley v. Fitzsimmons.
    4. They are split on how to determine whether a prosecutor is acting as an investigator or advocate when engaging in misconduct after probable cause is met.
18. Supreme Court Justice Clarence Thomas has opinioned that the Court should review the current immunity law both to consider a remedy for egregious misconduct and also to resolve the current conflicts in the Court of Appeals.
19. Recent empirical studies establish that prosecutorial misconduct is a significant factor contributing to numerous wrongful convictions of innocent people and emerging circuit splits on the application of the Absolute Prosecutorial Immunity doctrine suggest that it is becoming increasingly unworkable and as in fact undermining the goals it was designed to achieve.
20. ......

8. During all times mentioned in this complaint, Plaintiff was, and still is a citizen of the United States, and resided and now resides in the State of Illinois.
9. During all times mentioned in this complaint, John Grady (GRADY) and Virginia Kendall were Judges in the United States 7th Circuit Federal Court
10. During the times mentioned in this complaint, Vihar Patel (VIHAR-PATEL) was an Illinois Assistant Attorney General
11. During the times mentioned in this complaint, Kishar Patel (KISHAR-PATEL), and Bhagwan Patel, (BHAGWAN-PATEL) were owners or managers of Stardust Motel in Naperville

12. During the times mentioned in this complaint
13. During all times mentioned in this complaint, G. J. Bakalis(BAKALIS) and Kathryn Cresswall (CREESSWALL) were Dupage County Judges
14. During the times mentioned in this complaint Dr Corcoran (CORCORAN) was a doctor employed at Dupage County Jail.
15. During all times mentioned in this complaint John E Zaruba (ZARUBA) was Sherriff of Dupage County Jail
16. During all times mentioned in this complaint Gary Lavery was Chief of Dupage County Jail
17. During the times mentioned in this complaint, Lt Abruzzo(ABRUZZO), Collins, (COLLINS), Laskero, (LASKERO), Dempsey, (DEMPSEY), and Lyons, (LYONS) were Dupage County Sherriff Deputies
18. During the times mentioned in this complaint, Rink #5633, (RINK), Modera #7174, (MODERA), Leon # 5439, (LEON), Corneliusen # 4636, ( CORNELIUSEN), Westlove #2344, (WESTLOVE), Cammiso # 3434, (CAMMISO), and Trotsky #2345, (TROTSKY) were police officers in the Naperville Police Department.
19. During the times mentioned in this compliant defendants John Doe's #1 through 5 were Dupage , (County ASA's
20. During the times mentioned in this complaint, Chief (CHIEF) was the police chief of the city of Naperville
21. During the times mentioned in this complaint, Robert Miller, (MILLER) and Neil Devine (DEVINE) were Dupage County Public Defenders
22. During all times mentioned in this complaint, James Linn was a Cook County Judge at 26th & California
23. During the times mentioned in this complaint John Dillon, (DILLON), Melissa Meana, (MEANA), Sandell, (SANDELL), and Nantzy, LANTZY were Cook County ASA's at 26th & California
24. During the times mentioned in this complaint, Jane Doe was a Cook County Public Defender at 26th and California
25. During the times mentioned in this complaint, James Dillon, DILLON and Kelly, (KELLY), were Cook County Sherriff Deputies.
26. During the times mentioned in this complaint Kevin Jesse, (JESSE ) was a Cook County Probation Officer at 26th & California During times mentioned in this complaint, Colleen Ann Hyland, (HYLAND), Colleen McSweeny-Moore, (MCSWEENY-MOORE), John J. Hynes, (HYNES), William M Phelan, (PHELAN) and Peter Felice (FELICE), were Judges in the fifth District of Cook County.
27. During times mentioned in this complaint, Mark Teague, (TEAGUE), Ted Thanasouras, (THANASOURAS), Terrence Quinn, (QUINN), Scott Lipinski, (LIPINSKI), Claudette Green (GREEN) and Bob Lee (LEE), were Public Defenders in the Fifth District of Cook County.
28. During times mentioned in this complaint, Ms. Nicholle Hempel, (HEMPEL), Nicol Kakor, (KAKOR), Claudette Green, (GREEN), Peggy Gil-Curtin (GIL-CURTIN), Naheda Zayyad, (ZAYYED), and Donald Barton, (BARTON), were Assistant Public Defenders in the Fifth District of Cook County
29. During times mentioned herein, Alan J. Spellberg, (SPELLBERG), Miles J. Keleher, (KELEHER), Kalia M. Coleman (Coleman), were Assistant States Attorneys in the Cook County Appellate Division.
30. During times mentioned herein, Mary McCarthy (McCARTHY) was a probation officer on the fifth district of Cook County and in Cook County in general.
31. During all times mentioned in this complaint Anita Alverez, (ALVEREZ) was the Cook County States attorney

32. During times mentioned herein, Mathew, S Markos (MARKOS), was the Director of Forensic Clinical Services for the Circuit Court of Cook County.
33. During all times mentioned herein, HYLAND, MCSWEENY-MOORE, HYNES, PHELAN, FELICE, TEAGUE, THANASOURAS, QUINN, LIPINSKI, LEE, HEMPEL, KAKOR, GREEN, GIL-CURTIN, SPELLBERG, KELEHER, COLEMAN, McCARTHY, and MARKOS, and each of them, separately and in concert, agreement and conspiracy with each other, acted under color of statutes, ordinances, regulations, customs, and usages of the State of Illinois. Each of the co-conspirators, separately and in concert, agreement and conspiracy with each other, engaged in the illegal conduct here mentioned to the injury of the Plaintiff and deprived Plaintiff of the rights, privileges and immunities secured to the plaintiff by the Amendments to the Constitution of the United States.
34.

## THE UNITED STATES OF AMERICA

35. The UNITED STATES OF AMERICA maintains a policy of allowing Judges and prosecutors Absolute immunity from money damages.
36. The UNITED STATES OF AMERICA maintains a policy of not prosecuting Judges and prosecutors for their misconduct
37. Paragraphs 24 and 25 are in direct conflict with each other
38. The actions complained of in this instant action would not have happened without the concept of Absolute Immunity

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court upon recommendation of a jury Declare Judicial and Prosecutorial Immunity to violate the constitution of the United States of America

## PATEL and GRADY

39. PATEL conducted an Illegal Terry stop in John Grady's court room in order to intimidate the Plaintiff by letting the plaintiff know that he knows the plaintiff's address
40. PATEL then served papers at the plaintiff's address
41. The plaintiff complained to GRADY about PATEL's misconduct and GRADY did nothing
42. The United States Courts do not allow Defendant's to have the home address

**COUNT #1** 42 U.S.C §1983 EQUAL PROTECTION

The United States courts do not allow Defendants to have the home address of plaintiff's. The plaintiff is a class of 1

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge GRADY with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #2** 42 U.S.C §1983 EQUAL PROTECTION

The United States Courts do not allow Defendants to have the home address of plaintiff's. The plaintiff is a class of 1

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge VIHAR-PATEL with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

43. The Plaintiff was intimidated by VIHAR-PATEL'S failure to serve the Plaintiff at the service address provided to him.
44. VIHAR-PATEL did not need to know exactly where the plaintiff was living and complained to GRADY who refused to do anything about it.
45. At no time did VIHAR-PATEL need to know the exact whereabouts of the Plaintiff to run a criminal background check on the Plaintiff
46. GRADY had a duty to intervene in VIHAR-PATEL's illegal intimidation of the Plaintiff.

**COUNT #3** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge GRADY with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

47. These allegations against GRADY has caused extreme emotional distress to the plaintiff.
48. GRADY was the plaintiff's hero.
49. For over 6 years the plaintiff thought that GRADY was the author of the landmark ruling defining a civil conspiracy. 600 F2d 600 Hampton v Hanrahan
50. Hampton was a leader in the Black Panther Party.
51. By some accounts the Black Panther Party was a violent Gang.
52. Other accounts are he was a community leader bent on solving some of societies issues.
53. Indeed the Chicago City Council once passed a resolution declaring a date certain The Fred Hampton Day

54. The plaintiff had ties this event. The plaintiff was 11 years old when his cousin, a Chicago Police Officer was shot multiple times in the legs during the raid on the Black Panther Party immediately preceding the raid which murdered Hampton
55. He was declared a Chicago Police Officer Hero
56. His partner another Chicago Police officer was in the street wounded, my cousin left the shield of the vehicle he was using to prevent himself from being hit. He dragged his partner back behind the police car while being shot multiple times
57. The doctors could not remove all of the bullets and my cousin eventually lost his leg due to complications from the bullets.
58. My cousin was a racist.
59. Just prior to my cousins death, I asked him about the raid.
60. He responded (which shocks the conscience) ---yeah but we got the son of a bitch--- referring to Hampton.
61. I will not quote him exactly. He is dead and the Hampton case is closed thus serving no purpose.
62. However it truly did shock the conscience.
63. I am relieved to know that GRADY did not author the definition of a civil conspiracy
64. It saddens me to make the following accusation.

**COUNT #4** 42 U.S.C §1983 CONSPIRACY TO VIOLATE CIVIL RIGHTS

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge GRADY and VIHAR-PATEL with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

VIHAR-PATEL, KISHAR-PATEL, and BHAGWAN-PATEL

34. Because the plaintiff was intimidated by VIHAR-PATEL and GRADY'S civil right violations moved from his residence to the Stardust Motel.

35. Sometime after 30 days VIHAR-PATEL found the Plaintiff and proceeded with KISHAR-PATEL and BHAGWAN PATEL to manufacture evidence against the Plaintiff.

36. KISHAR-PATEL and BHAGWAN PATEL proceeded to manufacture an alleged internet service agreement.

37. The Plaintiff was in fact arrested for Aggravated Battery and Theft of Services.

38. Prior to his arrest the plaintiff had taken pictures of the alleged services.

39. These pictures would ultimately prove beyond all reasonable doubt that the alleged Internet services were in the process of being manufactured, thus preventing the completion of the Manufacture of the alleged internet service agreement.

40. The bill showed the plaintiff's phone use for 32 days.
41. The bill showed the charges for each phone call to be $0.00



42. The bill showed the total charges for the phone calls to be $0.00
43. Prior to the manufacture of the alleged internet service agreement everyone who rented by the week settled their phone bills each week.
44. The charges were $0.04¢ per minute.
45. The charges for local phone calls were free.
46. No-one in the country bills by the 32 day period
47. Bills are either weekly, biweekly, monthly, or end of month.
48. The plaintiff has never been charged with a crime of dishonesty in his life.

**COUNT #5** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge VIHAR-PATEL with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #6** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge KISHAR-PATEL with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #7** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge BHAGWAN-PATEL with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #8** 42 U.S.C §1983 CONSPIRACY TO VIOLATE CIVIL RIGHTS

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge VIHAR-PATEL, with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

VIHAR-PATEL, KISHAR-PATEL, BHAGWAN-PATEL, RINK, MODERA, LEON, CORNELIUSEN, WESTLOVE, CAMMISO

49. Upon being presented with this alleged internet bill the plaintiff immediately went to Walgreen's and brought a camera.
50. The Plaintiff returned and photographed the bill.



51. The plaintiff then called the Naperville Police wanting the person who presented the bill to the plaintiff arrested for extortion. This person was one of the Patels
52. LINK, LEON, and 1 or 2 others arrived and discussed the situation.
53. The entire time this discussion took place, the plaintiff sat in a chair and calmly discussed the evidence with the officers.
54. The officers refused to listen to the plaintiff saying he must owe the bill because he used 32000 minutes.
55. Phone companies had previously stopped charging its customers for local phone calls as early as 1996. The exact date is not known at this time.
56. They refused to listen to the Plaintiff when he explained to them that his internet service provider was kicking him off the phone line after a certain amount of time.
57. They refused to listen to him when he explained that reconnecting was a very slow process taking over 5 minutes.
58. They refused to listen to him when he explained that when he first registered at the motel he was told the phone charges were .04¢ per minute and local phone calls were free.
59. They refused to listen to him when he explained that all phone charges were to be paid weekly.
60. They refused to listen to him when he explained that he simply programmed his computer to stay connected at all times and reconnect whenever he was disconnected. Thus insuring he was connected 24 hours a day.
61. Sometime later the other Patel arrived.
62. At no time did the plaintiff engage in any kind of shouting match.
63. At no time did the plaintiff use any obscene language.
64. The plaintiff simply sat in the chair and discussed this with the officers only.
65. One of the officers finally spoke with the second Patel who had arrived and relayed to the plaintiff that they were willing to settle the bill for $50.
66. The plaintiff refused.
67. The officer told the plaintiff that if he refuses to pay he would be arrested.
68. The plaintiff thought about it and asked if he could take the officers pictures.
69. The plaintiff took each officers picture and each was smiling.
70. The officers should have just told the Patels and the plaintiff that they were going to do nothing.
71. The officers should have just told the Patels and the plaintiff that this was a civil matter since the bill showed $0.00 for each phone call and $0.00 for the total phone calls
72. The plaintiff then agreed to pay the bill.
73. The plaintiff had everything he needed. Pictures of the bill pictures of the officers smiling and could prove he made a complaint AND he was going to sue the managers of Blue Star Motel
74. The plaintiff then stood up and took his id's which his money was attached to or his credit cards were attached to.
75. The plaintiff does not recall if he was going to pay by cash or credit or even if he had cash on him.
76. While standing up one of the officers simply grabbed the plaintiff by the arms and turned him around and handcuffed him
77. The Plaintiff never resisted.

78. The plaintiff was transported to the station. This was not the same officer who effected the arrest.
79. While being transported the plaintiff told the officer he was going to sue him.
80. This officer immediately slammed on his brakes causing the Plaintiff to fly forward hitting his head on the barrier between the plaintiff and the officer.
81. When the plaintiff arrived at the station he demanded to be allowed to take a picture of the barrier with the officers.
82. An officer took a picture of the imprint of the plaintiff's head hitting the barrier.
83. The photo was blurry and the plaintiff has no clue if this was due to the officer's negligence or even if the officer tried to take a picture of the imprint itself.
84. One of the officers then engaged in a shouting match with the plaintiff even getting directly in front of the plaintiffs face
85. The Plaintiff never backed down
86. The louder the officer shouted, the louder the plaintiff shouted
87. We were right in each other's face through no fault of the plaintiff
88. The last words that came out of the plaintiff's mouth caused a spray to come out of his mouth.
89. At no time did the plaintiff intentionally spit on the officer.
90. The spray that came out the Plaintiff's mouth was caused by the officer himself.
91. From the best of the recollection of the plaintiff, the actual police report states that the plaintiff was sitting down and the stood up and approached the officer spitting in his face.
92. The plaintiff no longer has a printed copy of the of the officer's report but the plaintiff has a scanned copy of the report on a hard drive.
93. At this time the plaintiff cannot access this hard drive and cannot afford to have professional's do it.
94. The ASA who tendered all discovery to the plaintiff never tendered the video surveillance.
95. The entire incident in the station should have been captured on video tape, including the officer taking the picture of the imprint of the Plaintiff's head on the barrier.
96. The entire incident should have been captured on video tape including the officer in the plaintiffs face
97. The plaintiff was then pepper-sprayed in the eyes.
98. This pepper-spray succeeded in calming the plaintiff down.
99. The video surveillance tapes would have been preserved and used against the Plaintiff if they agreed with the officer's police reports

**COUNT #9** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Ideclare there is enough evidence to charge VIHAR-PATEL with 5 COUNTS of violating the Plaintiff's

civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #10** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge KISHAR-PATEL with 5 COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #11** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge BHAGWAN-PATEL with 5 COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #12** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge RINK with 5 COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #13** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge LEON with 5 COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #14** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge MODERO with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate

**COUNT #15** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge CORNELIUSEN with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #16** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge WESTLOVE with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #17** 42 U.S.C §1983 UNLAWFULL RESTRAINT

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge CAMMISO with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

100. Each of the defendant Naperville police officers should have intervened in the alleged internet bill scam
101. Each of the defendant Naperville police officers should have intervened in the initial arrest of the plaintiff
102. Each of the defendant Naperville police officers should have when the officer got in the plaintiff's face
103. Each of the defendant Naperville police officers should have intervened in the alleged spitting arrest.

**COUNT #18** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge RINK with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #19** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge LEON with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #20** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge MODERO with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate

**COUNT #21** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge CORNELIUSEN with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #22** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge WESTLOVE with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #23** 42 U.S.C §1983 FAILURE TO INTERVENE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge CAMMISO with COUNTS of violating the Plaintiff's civil rights. The plaintiff further seeks money damce ages, punitive damages and any other relief which this court deems appropriate.

**COUNT #24** 42 U.S.C §1983 EXCESSIVE FORCE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge THE OFFICER WHO TRANSPORTED with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

104. As a direct result of the actions alleged in paragraphs 39 through 103 the Plaintiff has been incarcerated a number of times totaling 533 days with no two years coming between the dates
105. The officers should have just told the Patels and the plaintiff that they were going to do nothing.
106. The officers should have just told the Patels and the plaintiff that this was a civil matter since the bill showed $0.00 for each phone call and $0.00 for the total phone calls.
107. The police chief of Naperville at the time of my arrest had an absolute duty to Train, supervise and discipline his subordinates.
108. I have an absolute duty to report the kind of conduct complained of herein.
109. COUNT # 25 is time barred.
110. However there should be a record for all time of his failure to do so
111. The arrest of the Plaintiff for theft of services was one of the most incompetent of acts.
112. The Defendant Naperville Police officers only defense for their incompetence is an IQ under 40.
113. The phone companies stopped charging for local phone calls because of the internet in as early as 1996.This incident occurred at least 10 years later

114. The nearest competitor for Stardust Motel, for weekly cheap motel rooms was already offering free high speed internet
115. Laptops use was exploding.
116. Stardust Motel rented lots and lots of rooms.
117. The bill that they showed the police had a handwritten note for $750 dollars.
118. This is a rate of .021¢ a minute.
119. They could have just programmed their computer to calculate the charges.
120. However they were participating in a conspiracy to have me arrested
121. The extent of the ultimate charges they were planning on was negated by the fact that I photographed the bill and immediately ( or as soon thereafter as they allowed me) upon arrival I released the camera.
122. The evidence shows that the Naperville and PATELS co-conspirators were interrupted in what they had in store for me.
123. COUNT #25 is time barred

**COUNT #25** 42 FAILURE TO TRAIN, SUPERVISE, and DISCIPLINE

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, will remove COUNT #25 after he serves the chief, after he notifies the appropriate Naperville authorities and after he notifies his current employer.

124. The plaintiff was taken to Dupage County Jail and held for 184 days.
125. The plaintiff initially represented himself.
126. The plaintiff asked for and received discovery including police reports.
127. One of the police reports stated I was highly intoxicated at the time of the incident
128. Prior to the incident I had just arrived home and had 1 beer.
129. One of the first things that happens when a person is becoming intoxicated is the persons speech becomes slurred
130. I asked for and received a copy of the 911 phone call on cassette tape.
131. BALKALIS and an unknown ASA gave me the tapes in open court .
132. I was returned to jail and on my next scheduled day for the law library I went and listened to the tapes.
133. I was elated, more evidence to negate his guilt.
134. The tape showed that when the Plaintiff made the phone call, his voice was crystal clear, with no slurred speech.
135. Just prior to listening to the tapes, LYONS had told the Plaintiff that the tapes were contraband
136. The Plaintiff was absolutely confused by this suggestion.
137. Possession of contraband in a jail or a prison is an absolute crime of criminal intent.
138. Nowhere in ZARUBA's or LAVERY's rules of conduct was an inmate informed that he could not have discovery provided to him by the courts.
139. After listening to the tapes, the plaintiff was furthered suspicious by LYONS accusations.
140. LYONS requested that the tapes be turned over to him.

141. Tapes can be altered.
142. A rational discussion – not an argument then ensued.
143. The plaintiff did not want another police officer to possess the tapes.
144. The word the plaintiff used was "Blue Shirt"
145. The plaintiff offered to turn the tapes over to BAKALIS, who was only a half a block away, for safe keeping.
146. This offer was not unreasonable, as this was not contraband according to the rules.
147. LYONS refused.
148. LYONS should have taken the high road and returned the tapes to the court.
149. The Plaintiff did not want him to have possession.
150. The plaintiff's requests and suggestion for a solution were not unreasonable considering that 6 police officers were accusing the plaintiff of two counts of felony battery.
151. The plaintiff's requests and suggestion for a solution were not unreasonable considering that the charges were the plaintiff's word against 6 police officers.
152. The plaintiff's requests and suggestion for a solution were not unreasonable considering that the tape that LYONS wanted contained evidence that tended to negate the guilt of the Plaintiff
153. Why did LYONS insist and keep insisting that he have the tapes.
154. The plaintiff again requested that the court take possession of the tapes.
155. LYONS then called ABRUZZO who accused the Plaintiff of possession of contraband
156. The Plaintiff explained that he was given the tapes by BAKALIS and the tapes should be returned to him.
157. ABBUZZO told the Plaintiff that he should have obtained a court order.
158. The plaintiff then explained that he did using Supreme Court Rule 412 "Discovery" to obtain the tapes.
159. ABRUZZO then fueled the Plaintiff's suspicions by explaining that the judge knows the rules of the jail and would not have given the Plaintiff the tapes.
160. However the judge did give the tapes to the Plaintiff.
161. The plaintiff has the documentation that the Judge did give the tapes to the Plaintiff
162. LYONS then changed tactics and told the Plaintiff that if he did not give LYONS the tapes he would take them by the force.
163. The plaintiff was given seconds to make a decision, how does he prevent LYONS from altering the tapes.
164. The plaintiff threw the tapes on the floor shattering them.
165. While the tapes could eventually be re-spooled, they could not be altered anytime soon.
166. The plaintiff concedes that he was already in custody, for which the plaintiff intentionally makes the following paragraph confusing, and intentionally makes the following paragraph crystal clear.
167. The plaintiff was taken into custody
168. At which point the plaintiff digresses from an consecutive timeline in this complaint because the following Counts are time barred after tomorrow.

169. COOK COUNTY ASA MS. NAHEDA ZAYYAD told the court of July 23rd, 2009 that I was convicted of delivery of cannabis which is a felony in 1979.
170. Though it is now 7/25/09 the plaintiff two days after the expiration of the statute of limitations, it should be noted that the statute of limitations fell on a Saturday, therefore it expires on the next business day.
171. I was arrested for this alleged felony, however I was convicted of simple possession
172. This alleged felony conviction has never shown up in any way in the 30 years of my life.
173. Indeed, the plaintiff has a copy of his background used by the state in a 402 conference later that year which shows and incorrectly the plaintiff might add that the Plaintiff was convicted of a felony for which Mary McCarthy tried to unlawfully take his DNA from and a misdemeanor conviction, but does not include ZAYYED'S alleged felony conviction for Delivery of Cannabis
174. It should be noted the Plaintiff has a prior relationship with ZAYYAD.
175. The plaintiff was homeless which McCARTHY expresses great concern for in a light most unfavorable to the Plaintiff because he was a witness to his sister striking her own child.
176. Though homeless the plaintiff picked up his sister's children for each court date for his sister.
177. The plaintiff worked with ZAYYAD and got his sister into the renowned Gateway Foundation which the plaintiff has a long time friend and personal contact with, for treatment for alcohol substance abuse.
178. When this was accomplished ZAYYAD personally thanked the plaintiff in front of the plaintiff's children.
179. The plaintiff does not know the motivation for ZAYYAD'S lie to the court however it has caused him emotional distress.
180. It should also be noted that ZAYYAD is not afforded Absolute Immunity for her violation of Due Process as a background investigation is simply an investigation. Prosecutors do not have immunity for their investigations only as advocates
181. The plaintiff cannot prove a conspiracy to violate his civil rights

**COUNT #26** 42 U.S.C §1983 DUE PROCESS

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge ZAYYAD with violating the Plaintiff's civil rights. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

182. The plaintiff further alleges a failure to train supervise and punish ZAYAD by ANITA ALVEREZ, if not time barred.
183. If ALVEREZ won't train her Assistant State's Attorney's, the plaintiff will.

**COUNT #27** 745 ILCS 10/9-102

(16)

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS, that the appropriate person or authority to whom this is normally directed, pays any damages, and attorney fees that ZAYYAD is found liable for, including attorney fees for Declaratory Relief

**COUNT #28 FAILURE TO TRAIN, SUPERVISE AND PUNISH**

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS this Honorable Court declare there is enough evidence to charge ALVEREZ with FAILURE TO TRAIN, SUPERVISE AND PUNISH. The plaintiff further seeks money damages, punitive damages and any other relief which this court deems appropriate.

**COUNT #28 745 ILCS 10/9-102**

WHEREFORE THE PLAINTIFF, MICHAEL J. CORBETT, PROPRIA PERSONA, PRAYS, that the appropriate person or authority to whom this is normally directed, pays any damages, and attorney fees that ALVEREZ is found liable for, including attorney fees for Declaratory Relief

**I Michael J Corbett, on oath under penalty of perjury states that the following is within his personal knowledge, is true and correct and if asked to testify to the following in a court of law would do so,**

This complaint is not yet complete, and needs to be amended. I am working due diligently to do so, however I am indigent and will have approximately $500 when this is filed. This money will be completely exhausted before I can complete the amended complaint. I cannot afford to make the appropriate copy's to be served on the Defendants, nor can I afford to serve the Defendant's. Furthermore I am in fear for my life. Hanrahan did murder Fred Hampton. My cousins 5 word "confession" convinced me of that. However I offer the following as proof that I am fearful.

LYONS and ABRUZZO did charge me with Possession of Contraband. Disobeying a deputy, and disorderly conduct. I have the documents to prove so. BAKALIS did give me the alleged contraband and I have a document where he states it was not contraband.

COLLINS, LASKERO and DEMPSEY did find me guilty of possession of contraband, disobeying, and disorderly conduct. I can prove that I did not have contraband, by BAKALIS document. I can prove that I did not disobey LYONS request to turn over the documents, and I can prove that I did not commit disorderly conduct when I destroyed the tapes, they were mine and I was free to turn them over to LYONS in any condition I deemed fit. Further they failed to provide me my due process rights when I requested BAKALIS as a witness. As a direct and proximate result I was put in a hole for 54 days even though they only punished me for 10 days.

LAVERY violated my due process rights when he repeatedly refused to give me a rehearing on the charges. He also failed to train his deputies. He also knew and did not intervene with CORCORANS unlawful restraint.

CORCORAN after the initial 10 days in the hole put me into a much worse hole. This was a cellblock with 7 other individuals. I can prove that 6 of them were absolutely crazy and never would have survived the KANGAROO COURTS allowed in all cell blocks except the one I was in. One of them walked around with a crown of toilet paper on his head. One of them spent his entire time away doing Karate Kata punching his cell block walls. One of them stripped, crawled across the dayroom floor and destroyed the TV. The two people on either side of me were completely crazy. On my right was a person who was having an anxiety attack, however this was not a normal anxiety attack, this was an external one where he was having an verbal argument with himself, and he never shut up. The person immediately to my right was in the manic phase of a Bi-Polar disorder the entire time he was there. He was delusional. For example one of his delusions was that he saw a guard bribe another inmate in the cell block next to us to fellatio him through the chuck-hole. Not only was this act impossible unless the guards privates were 12 inches long, it was pitch dark at night and no one could see into the cell block. There were others that were as completely crazy as the ones has the ones I describe, however the exact details escape me at this time. Lastly the 8th person who was in this Cell Block had an IQ of 40. He was one of the persons pardoned by RYAN. Who was a total pest. I repeatedly for the entire time I was in this cell block would tell everyone, including those who were incapable of responding to him about his case and alleged due process allegations. His IQ was so law it would have to be watered to make it grow. He never shut up when he was out of his cell. I can prove that this cell block gave me a nervous breakdown. My blood pressure was somewhere around 180 over 110 though the exact numbers escape me. However I have the nurses report on a hard disk which I cannot access due to my indigence.

My nervous breakdown forced them to transfer me to a cell block next door. This cell Block was also a solitary confinement against my will. The manic depressive person would repeatedly spend his time talking his nonsensical talk through the door. There were 2 other people in this block. I was sane but was there by his own request do to fears related to being in general population. The other one simply slept.

CORCORANS purpose in keeping me there was to give me a chemical lobotomy. He kept insisting that BAKALIS was ordering it. He was trying to give me a major tranquilizer. I can present thousands of mental health experts who would testify that the substantial result of giving such a medication would disorient a person as to time and place. I can present thousands of mental health experts that would testify that the tranquilizer would change a persons libido. (By libido I am not referring to sex drive, as most non-educated persons believe is a persons libido, I am referring to the correct medical interpretation of libido, a persons "hopes, dreams, and wishes."). That is any tranquilizer or stimulant would have the same result. This is the reason I stopped doing Cocaine. Though cocaine itself is not a tranquilizer or stimulant it is sometimes cut with a stimulant by drug dealers. I simply did not want to keep changing my libido. If however

I could ensure that I was not getting coke cut with a stimulant I would never have stopped. The reasons stimulants are banned from the workplace is a person who takes them has to come down causing a period of time without any energy and a person easily distracted. No person should be allowed to take stimulants and be allowed to work in a physical capacity. This endangers the person and everyone around them. Indeed, workplaces do not even test a person for tranquilizers, as a person on tranquilizers would never get the job anyway. However workplaces do test for stimulants because they can never be sure the person on stimulants has a constant supply. However they do not care if a person is taking stimulants under Doctors orders. I HAVE FIRSTHAND KNOWLEDGE.

CORCORAN forced me to take a major tranquilizer to disorient me as to time and place. The supreme Court forbids the use of medications by force. I was sentenced to 10 days discipline, and was disciplined for 54 days. When I informed BAKALIS that CORCORAN was forcing me to take a major tranquilizer, telling me BAKALIS ordered it, BAKALIS denied it. BAKALIS should have intervened. I would never have been removed from my cell block based upon the KANGAROO COURTS Dupage County Jail rules. My cellmates liked me.

Indeed he can never claim he wanted to put me on this tranquilizer because of my incident with LYONS. I was allowed to be with LYONS 3 times a week for 1 hour each time, unsupervised by anyone but LYONS without incident.

Indeed though LYONS claims I committed 3 crimes, he documents that force never had to be used against me. It is then documented that I saw him 3 times a week unsupervised for the next 7 and ½ weeks, without incident.

I moved to have BAKALIS removed for cause. CRESWALL knew of the unlawful restraint by CORCORAN and should have intervened. John DOE's # 1 through 5 knew of the unlawful restraint and never intervened. MILLER and LEVINE knew of the unlawful restraint and never intervened.

ZARUBA did fail to train supervise and discipline his subordinates.

Most allegations against McSWEENY-MOORE, HYNES ,PHELAN, FELICE, TEAGUE, THANASOURUS, QUINN, LIPINSKI, LEE, GREEN, HEMPEL, KAKOR, GILL-CURTIN, ZAYYAD, BSRTON, SPELLBURG, KELEHER, COLEMAN and ALVEREZ are contained in my motion to file a supplemental Brief for the Defendant by the actual Defendant, or my motion for Reconsideration of their denial to file my motion, or in the DRAFT of the lawsuit attached to my supplemental brief.

However, I might had that they did not want to give me a fair trial by a jury. Indeed, after HYNES, discussed this case with PHELAN, PHELAN set a U.S. record for returning a person to jail under an unlawful restraint, under a $100,000 bond simply because he refused to be coerced into pleading guilty to a Class B misdemeanor, with only supervision, no record of conviction. They did not want to give me a fair trial by jury is supported by the fact that GIL-CURTIN refused to obey a court order to turn over the

tapes for 200 and some odd days. They did not want to give me a fair trial by jury by allowing the jury to find me guilty if I accused someone who is trying to take my DNA without lawful authority, of trying to take my DNA without lawful authority to encourage them to stop trying to take my DNA without lawful authority. They did not want to give me a fair trial by Jury, with HYNES, FELICE and PHELAN practically begging me to let them hear the case. Indeed the audacity of this instruction would allow the tribune exec who was told by BLAGOJIViCK (spelling incorrect but I do not have time to correct it) that the state would not help the Trib sell Wrigley Field to be convicted of telephone harassment if he simply told the Gov, I am going to now call the police and tell them that you are criminally extorting me. Same goes for the executive when the Gov told the Children's Hospital that he would not receive state funding if the executive did not contribute to the Gov's funds.

The legal definition of the word threat is very simple. If you can legally do it, you can threaten to do it.

Prior to making this call, my words were chosen very carefully to remain within the legal limits. I even at one time thought I had told McCARTHY that I was going to throw her in the back seat of my car. Though I had no intention of actually throwing her in the back seat of my car, I was going to use the word symbolically. Police officers throw people in jail all the time. HYNES was suggested that the import of my words were very serious. I agree with him, the import of my words were very serious, however for different reasons, "if you can't do the time, don't do the crime".

I was promised by FELICE when I agreed to use the public defender's office that they would use the defense I thought I needed and the very next Public Defender was QUINN. QUINN told him I was guilty saying that you cannot threaten someone over the phone. (again another public defender using the wrong definition of threat). I called him an A-hole though the very word I used had two ss's in it. As soon as I entered the courtroom and accused QUINN of battery it was swarming with deputies, who heard QUINN state that it was an accident. I disagree with the court reporters version of the events, as to the number of deputies in the courtroom, though I am unable to swear by it. I was extremely angry. I did slam the door breaking it to demonstrate how QUINN'S statement that it was an accident. The only way it could be an accident was if he was having a heart attack or a seizure. I pointed to each deputy in the room and told them they were under arrest to aiding and abetting. The court reporter captured this however did not correctly record the number of arrests I made in that courtroom that day. Each of these deputies heard QUINN state that it was an accident and each of these deputies knew that QUINN's statement was a lie. Each of these deputies is guilty of Aiding and Abetting and resisting arrest. FELICE IS GUILTY OF FAILURE TO INTERVENE. Make no mistake about it, I was extremely angry, I did slam the courtroom door demonstrating what QUINN did to me, I did break the door doing so. I arrested every deputy in the room. AND I was not arrested for criminal damage to property because each and every deputy knew I was the victim of aggravated battery. HOW DOES A PERSON WHO IS THE VICTIM OF AGGRAVATED BATTERY SUPPOSE TO ACT. DOES ANYONE HAVE GUIDELINES ON HOW A PERSON WHO IS THE VICTUM OF AGGRAVATED BATTERY SUPPOSED TO ACT WHEN THE CRIMINAL JUSTICE SYSTEM REFUSES TO DO ANYTHING ABOUT IT.

I was promised by FELICE when I agreed to use the public defender's office that they would use the defense I wanted. This defense is very simple, if you can do it, you can threaten to do it. LIPINSKI was